STEVEN W. MYHRE
Acting United States Attorney
RICHARD ANTHONY LOPEZ
Assistant United States Attorney
501 Las Vegas Boulevard South, Suite 1100
Las Vegas, Nevada 89101
Tel: 702.388.6336 / Fax: 702.388.6418
richard.lopez2@usdoj.gov

Attorneys for United States of America

# UNITED STATES DISTRICT COURT
# DISTRICT OF NEVADA
-oOo-

| | |
|---|---|
| UNITED STATES OF AMERICA, | Case No. 2:17-cr-00005-KJD-NJK |
| Plaintiff, | GOVERNMENT'S RESPONSE TO DEFENDANT'S SENTENCING MEMORANDUM [ECF 17] |
| vs. | |
| SETH WITTNER, | |
| Defendant. | |

The United States of America, by and through Steven W. Myhre, Acting United States Attorney, and Richard Anthony Lopez, Assistant United States Attorney, hereby responds in opposition to Defendant Seth Wittner's sentencing memorandum. As explained further below, the Court should reject the Defendant's request for a term of probation and instead sentence the Defendant to a term of imprisonment within the applicable guideline range determined by the Court.

## RELEVANT FACTS

On January 9 and 11, 2015, a Special Agent with Homeland Security Investigations used peer-to-peer software to establish a connection with a computer

1     with IP address 72.193.242.92 that was sharing videos of child pornography using

2     the eMULE file sharing network. The Special Agent downloaded from that computer

3     two videos depicting child pornography.

4           The owner of IP address 72.193.242.92 (Cox Communications) identified the

5     Defendant as the registered subscriber using that IP address at the time the Special

6     Agent downloaded the child pornography. Law enforcement obtained a search

7     warrant for the Defendant's address and executed that warrant on June 19, 2015,

8     seizing several digital devices from the Defendant's home.

9           A forensics exam discovered 36 videos of child pornography on two of those

10    devices. One of those videos depicts a fully nude prepubescent girl under the age of

11    12 performing oral sex on an adult male. The adult male manipulates the young

12    girl's head and ejaculates into her mouth. Another video file depicts a partially nude

13    prepubescent girl under the age of 12 performing oral sex on an adult male. The

14    adult male also vaginally penetrates the young girl with his erect penis and

15    ejaculates on the young girl's face. Yet another video file depicts a young girl who

16    appears to be between 5 and 6 years old. The young girl is handcuffed and partially

17    nude. The young girl is vaginally penetrated with a sex toy and anally penetrated by

18    an adult male's fingers. An adult male performs oral sex on the young girl.

19                                    **ARGUMENT**

20           Nelson Mandela has said that, "[t]here can be no keener revelation of a

21    society's soul than the way in which it treats its children." United States v.

22    Cunningham, 680 F. Supp. 2d 844 (N.D. Ohio 2010). In referring to this quote, the

23    court noted, "Given the recent statistics surrounding child pornography, we are

living in a country that is losing its soul." Id. The public abhors the thought of someone collecting and viewing materials that depict the rape and sexual abuse of children for that person's own sexual gratification. Yet, when these cases come before the Court, defendants invariably there attempt to minimize the reprehensible nature of their conduct. This case is no different.[1]

Child pornography "is not a crime of inadvertence, of pop-up screens or viruses that incriminate an innocent person." United States v. Bistline, 665 F.3d 758, 765 (6th Cir. 2012). Rather, the Defendant purposefully and repeatedly searched for, sought out, and downloaded child pornography for his sexual gratification. The tens of thousands of images he admits to possessing demonstrates the length and extent of his criminal actions. In spite of this, the Defendant has requested a staggering variance from the PSR's recommended sentence of 78 months to only probation.

**A.**    **The § 3553(a) Factors Support a Sentence Within the Advisory Guidelines Range.**

The goal of sentencing is to "'impose a sentence sufficient but not greater than necessary' to reflect the seriousness of the offense, promote respect for the law, and provide just punishment; to afford adequate deterrence; to protect the public; and to provide the defendant with needed . . . correctional treatment." United States v. Carty, 520 F.3d 984, 991 (9th Cir. 2008) (quoting 18 U.S.C. § 3553(a)). The Defendant

---

[1] In support of his request for probation, the Defendant primarily relies on his lack of criminal history, understates the extent of his child pornography problem, and asserts that he is "a decent and hardworking man who acted totally out of character in possessing these images [of child pornography]." (ECF 17 at 4.) The Advisory Guidelines range already accounts for the first consideration, while the last two are flat out contradicted by the record.

needs a within-range sentence to adequately further these goals, reflecting the seriousness of the offense and the debilitating effects the offense has on the child victims, deterring the Defendant from his criminal activities, promoting respect for the law, and protecting the public.[2]

The Government concurs with the PSR's calculation of the total offense level (28), the Defendant's criminal history category (I), and the Advisory Guidelines range (78-97 months). Based on the § 3553(a) factors, a term of imprisonment within the applicable Advisory Guidelines range is appropriate in this case.

### 1.   **Child Pornography Is a Serious Offense.**

Possession of child pornography is not a victimless crime. All of the children depicted in the Defendant's collection were victimized by the Defendant's actions. Previous victims of child pornography have described in detail the pain that they suffer based upon the distribution and possession of images and videos of their abuse by individuals like the Defendant. Images of child pornography depict the worst days

---

[2] Rehabilitation is a relevant factor for the Court to consider in determining the terms and conditions of supervised release, see, e.g., 18 U.S.C. § 3562(a), but a sentencing court "may not impose or lengthen a prison sentence to enable an offender to complete a treatment program or otherwise to promote rehabilitation." Tapia v. United States, 564 U.S. 319, 335 (2011). Although the Court is surely aware of these limitations, appeals currently pending in the Ninth Circuit are challenging sentences on the ground that the sentencing court emphasized or referred to the defendant's educational and training needs while discussing the custodial sentence it was imposing. See, e.g., Defendant's Reply Brief, United States v. Barlese, No. 16-10084 (9th Cir. Sept. 9, 2016), available at 2016 WL 4760907. To avoid any such issue on appeal in this case, the Government respectfully notes that 18 U.S.C. § 3582(a) instructs that the sentencing court, "in determining whether to impose a term of imprisonment, and, if a term of imprisonment is to be imposed, in determining the length of the term, shall consider the factors set forth in section 3553(a) to the extent that they are applicable, *recognizing that imprisonment is not an appropriate means of promoting correction and rehabilitation*." (emphasis added).

4

of a child's life: the day that they were raped, tortured, assaulted, and abused by another (often times by someone they trusted, such as a father, uncle, friend, or coach). While the Defendant did not himself physically abuse these victims, he possessed the videos and images of their abuse for sexual gratification. Because of him and others like him, there is a market for these images without which the abuse would have ended at the time the abuser stopped abusing the victim. The effects of child pornography are worsened because the exploitation is never ending. Victims have to live knowing that their abuse is being shared online to satisfy the sexual desires of individuals like the Defendant who seek it out and also make it available to others. (See, e.g., PSR ¶ 17.)

There is little question that the crime of possession of child pornography is a serious crime. Congress and the United States Supreme Court have found that the prevention of sexual exploitation and abuse of children constitutes a government objective of great importance because of the psychological and physical effects such abuse has on children and their families. Moreover, child pornographers use depictions of children engaged in sexual acts to show their victims that because other children do it, they should also participate. Additionally, research and experience also tells us that there is a fine line between those who view child pornography, and those who eventually act out what they have seen by sexually molesting children.

Congress enacted the PROTECT Act in 2003 to enhance the penalties for crimes involving the sexual exploitation of children. Congress also sought to restrict the ability of courts to grant downward departures in cases of sexual exploitation of children. The Commentary to USSG § 5K2.0 explains that "[t]he standard for a

downward departure in child crimes and sexual offenses differs from the standard

for other departures under the policy statement in that it includes a requirement . . .

that any mitigating circumstances that form the basis for such a downward

departure be affirmatively and specifically identified as a ground for downward

departure . . . ." USSG § 5K2.0 appl. note 4(B)(i).

As justification for higher sentences in child pornography offenses, Congress

stated:

> (2) The Government has a compelling state interest in protecting
> children from those who sexually exploit them, including both child
> molesters and child pornographers. "The prevention of sexual
> exploitation and abuse of children constitutes a government objective
> of surpassing importance," New York v. Ferber, 458 U.S. 747 (1982),
> and this interest extends to stamping out the vice of child pornography
> at all levels in the distribution chain." Osborne v. Ohio, 495 U.S. 103,
> 110 (1990).
>
> (3) The Government thus has a compelling interest in ensuring that the
> criminal prohibitions against child pornography remain enforceable
> and effective. "The most expeditious if not the only practical method of
> law enforcement may be to dry up the market for this material by
> imposing severe criminal penalties on persons selling, advertising, or
> otherwise promoting the product." Ferber, 458 U.S. at 760.

The PROTECT Act, Pub. L. No. 108-21, § 501 (Findings) (Apr. 30, 2003).

Congress, the Supreme Court, and the Sentencing Commission also believe

deterrence is a very important factor when dealing with this issue. United States v.

Irey, 612 F.3d 1160, 1206 (11th Cir. 2010) (citing Ferber, 458 U.S. at 760). As the

Seventh Circuit explained in United States v. Goldberg:

> Young children were raped in order to enable the production of the
> pornography that the defendant both downloaded and uploaded-both
> consumed himself and disseminated to others. The greater the
> customer demand for child pornography, the more that will be
> produced. Sentences influence behavior, or so at least Congress thought

6

when in 18 U.S.C. § 3553(a) it made deterrence a statutory sentencing factor. The logic of deterrence suggests that the lighter the punishment for downloading and uploading child pornography, the greater the customer demand for it and so more will be produced.

491 F.3d 668, 672 (7th Cir. 2007).

## 2.   The History and Characteristics of the Defendant Reveal His Significant Child Pornography Problem.

The Defendant's sentencing memo incorrectly claims "[t]here is no evidence that [he] ever participated in *collecting and viewing* these types of images previously." (ECF 17 at 3 (emphasis added); see also id. at 4 ("[The Defendant] is a decent and hardworking man who acted totally out of character in possessing these images.").) To the contrary, the Defendant admitted to a psychologist that "the height of his child pornography *collecting and viewing* was in 2014 . . . . [when] [h]e estimated that he interacted with this material 3 to 5 times a week, up to 5 or 6 hours at a time, downloading as many as 20,000 files." (Id. at 13 (emphasis added).)[3]

While the Defendant argues that "this is not a typical federal child pornography case with thousands of images and videos seized" (id. at 4), the Defendant himself explained to the psychologist why there were fewer than 100 videos on his computer when it was seized: "[The Defendant] had begun to use specialty software to delete and clean his child porn files but he acknowledged he had not eliminated all of them." (Id. at 13.) When asked why he would delete some, but not all, of the child pornography, "the Defendant explained that it was

---

[3] "In addition to the child pornography, [the Defendant] stated he also had a fairly large collection of still pictures featuring . . . child erotica." (ECF 17 at 13.)

1   'psychologically difficult' to 'get out of the habit' and was 'weaning' himself off of child

2   pornography 'stepwise.'" (<u>Id.</u> at 12.)

3         Indeed, the Defendant's child pornography problem is extensive and severe.

4   The Defendant "admitted that he found child pornography to be 'arousing'" (<u>id.</u>), and

5   explained his attraction to child pornography: "[T]he girls in the [child pornography]

6   he watched were 'so willing and docile,' feeding the fantasy of a man 'being accepted

7   and pleased by so many females.'" (<u>Id.</u> at 13.) The Defendant took affirmative steps

8   to hide his child pornography, using special software to wipe the files from his

9   computer, but was so attached he could not summon the psychological strength to

10  delete all of his videos and could not stop himself from downloading more.

11        While the Defendant claims he "on his own, began seeing a counselor for his

12  problems [that] form the basis of the criminal charges for which he will be sentenced"

13  (<u>id.</u> at 4), the only evidence submitted with his sentencing memo shows that he began

14  counseling on January 14, 2017, four days after the criminal information in this case

15  was submitted to the Court (and 18 months after he retained counsel in response to

16  the execution of the search warrant at his home).

17        Finally, the conclusions of psychologist Mark Chambers submitted with the

18  Defendant's sentencing memo should be given little to no weight for two reasons.

19  First, the assessments employed by Dr. Chambers (SORAG/VRAG[4] and SSPI[5]) focus

20  on the Defendant's likelihood of committing a contact crime with a child in the

21

22  [4] "The VRAG and SORAG are designed to measure violence, not sexual deviancy." <u>United States v. Abregana</u>, 574 F. Supp. 2d 1145, 1157 (D. Haw. 2008).

23  [5] "[The Defendant's SSPI score] indicates a low tendency for pedophilia and a concomitantly low risk for future sexual offending against children." (ECF 17 at 16.)

1   future. Dr. Chambers does not comment on the likelihood the Defendant will

2   reoffend by continuing to possess, view, or distribute child pornography.

3          Second, Dr. Chambers' analysis relies on the Defendant's self-reported and

4   self-serving sexual preferences, sexual history, and history of criminal conduct.[6] For

5   example, Dr. Chambers found "of greatest significance . . . the fact that [the

6   Defendant has multiple sexual relationships with adult women and has had over 50

7   sexual partners, again, adult women" (id. at 16), an unverified fact with no indicia

8   of reliability.

9          **B.    A 20-year Term of Supervised Release Is Appropriate.**

10         The Government concurs with the PSR's recommendation of 20-year term of

11  supervised release. While the Defendant sought out psychological treatment after

12  the institution of this case, the Government submits that his correctional treatment

13  and rehabilitation is based in part on the supervision to which he knows he is subject.

14  Considering the Defendant's admitted struggles with child pornography (ECF 17 at

15  12) and his age, a 20-year term of supervision will go far in keeping the community

16  safe, providing offender management services, and helping the Defendant stay

17  accountable and continue to receive sex offender treatment after his release from

18  custody.

19

20

21

22

23  [6] See ECF 17 at 11 ("SOURCES OF DATA: Interview of defendant by Mark J.
    Chambers, Ph.D").

C.    <u>**The Court Must Modify Special Condition 1 to Comply With Binding Ninth Circuit Precedent.**</u>

Special Condition 1 (Pornography Prohibition) in the PSR is too strict under current Ninth Circuit law. <u>See</u> <u>United States v. Cope</u>, 527 F.3d 944, 957-58 (9th Cir. 2008) (finding the inclusion of a similar condition prohibiting pornography to be plain error). The Government requests the following sentence be added at the end of Special Condition 1: "The prohibition on the defendant's possession or viewing of pornography does not apply to materials related to a collateral attack or used for the purpose of court mandated treatment."

**CONCLUSION**

For the above reasons, the Government respectfully requests that this Court deny the Defendant's request for a downward variance and impose a sentence within the applicable sentencing guideline range as determined by the Court.

DATED this 14th day of June, 2017.

Respectfully submitted,
STEVEN W. MYHRE
Acting United States Attorney

 */s/ Richard Anthony Lopez*
RICHARD ANTHONY LOPEZ
Assistant United States Attorney

10

1

## **<u>CERTIFICATE OF SERVICE</u>**

2    I, Richard Anthony Lopez, hereby certify that I am an employee of the United

3  States Attorney's Office for the District of Nevada and that on this day I served an

4  electronic copy of the above GOVERNMENT'S RESPONSE TO DEFENDANT'S

5  SENTENCING MEMORANDUM on Counsel of Record via Electronic Case Filing

6  (ECF).

7    Dated: June 14, 2017

8                                        /s/ *Richard Anthony Lopez*
                                        RICHARD ANTHONY LOPEZ
9                                        Assistant United States Attorney

10

11

12

13

14

15

16

17

18

19

20

21

22

23