UNITED STATES DISTRICT COURT

DISTRICT OF NEVADA

* * *

| | |
|---|---|
| UNITED STATES OF AMERICA,<br><br>                                          Plaintiff,<br><br>        v.<br><br>SETH WITTNER,<br><br>                                          Defendant. | Case No. 2:17-cr-00005-KJD-NJK<br><br>**ORDER DENYING DEFENDANT'S<br>MOTION TO VACATE** |

Before the Court is Defendant's Amended Motion to Vacate Sentence Under 28 U.S.C.
§ 2255 (ECF #48). The government responded in opposition (ECF #55) to which Defendant
replied (ECF #56).

I.      Factual and Procedural Background

Defendant Seth Wittner ("Wittner") pleaded guilty to a criminal information charging
him with possession of child pornography. (ECF #55, at 3). Wittner had become the subject of a
Homeland Security investigation regarding an Internet Protocol address in use at Wittner's
home. Id. at 2. On June 12, 2015, Homeland Security executed a search warrant and seized
devices belonging to Wittner. Id. The devices contained multiple videos of child pornography.
Id. Wittner pleaded guilty to possession of the child pornography in February 2017 and
proceeded to a sentencing hearing. Id. at 3.

At the sentencing hearing, the Court and all parties agreed that the appropriate Guideline
range of Wittner's offense was 78–97 months in prison. Id. at 8. Prior to sentencing, Wittner
asked the Court to impose a probationary sentence. Id. at 4. Wittner moved for a downward
variance to a sentence of probation. Id. Wittner argued that his lack of criminal history, character
references and support letters on his behalf, genuine expression of remorse, exemplary
performance on pretrial release, and a psychological examination by Dr. Mark Chambers ("Dr.

Chambers") that determined Wittner was a low risk to re-offend, supported a probationary sentence. Id. at 9. The government requested a sentence within the Sentencing Guidelines. Id. In making its request, the government relied upon statements from Dr. Chambers's report. Id. at 10. The report stated that Wittner possessed "tens of thousands of [contraband] images," that Wittner "interacted with [child pornography] 3 to 5 times a week, up to 5 or 6 hours at a time, downloading as many as 20,000 files," and that Wittner found it "psychologically difficult" to delete all his child pornography, suggesting a stubborn problem. Id. The government used Dr. Chambers's report, which was submitted by Wittner's counsel to show that he was a low risk to re-offend, to argue that Wittner had a severe problem with child pornography. Id. The Court found a low-end sentence was appropriate, and sentenced Wittner to 78 months in prison, followed by 20 years of supervised release. Id. at 12. In making its determination, the Court stated that

> I do not believe that a substantial variance, as requested by the defendant, would comport with the factors the Court is required to consider in issuing sentences. . . The reason that I make these statements is that the defendant's use of child pornography goes back almost 40 years. He has been strongly attracted to child pornography from 1974 on when he first viewed it in Norway. His last adult relationship was also about that long ago. He—in his statements to Dr. Chambers, he acknowledged that he had had his last adult relationship when he graduated from Reed, which was 44 years ago.

(ECF #27, at 14–15). This information was only available in Dr. Chambers's report. (ECF #48, at 11). Wittner alleges that the facts were misconstrued, as he never sought out child pornography while he lived in Norway, but "he ordered adult pornography and when he received it, child pornography was packaged with it." Id. at 24. Regarding his adult relationships, Wittner points out that Dr. Chambers's report was incorrect because he was married until 1980 but graduated from Reed in 1973. Id. at 25. Wittner also claims to have had adult romantic relationships when he lived in Philadelphia from 2001–2003 which lasted approximately six months. Id. The Court's reliance on the facts from Dr. Chambers's report and the alleged misstatement of fact provide the basis for Wittner's claim of ineffective assistance of counsel.

II.     Legal Standard

Title 28 U.S.C. § 2255 allows a defendant in federal custody to challenge his conviction

on the grounds that it "was imposed in violation of the Constitution or laws of the United States." 28 U.S.C. § 2255(a). Though § 2255 allows certain collateral attacks to a judgment of conviction, it is not intended to give criminal defendants multiple opportunities to challenge their sentences. United States v. Dunham, 767 F.2d 1395, 1397 (9th Cir. 1985). Rather, § 2255 limits relief to cases where a "fundamental defect" in the defendant's proceedings resulted in a "complete miscarriage of justice." Davis v. United States, 417 U.S. 333, 346 (1974). That limitation is based on the presumption that a defendant whose conviction has been upheld on direct appeal has been fairly and legitimately convicted. United States v. Frady, 456 U.S. 152, 164 (1982).

The Court assumes that a judgment of conviction is valid once a defendant has waived or completed his appeal. Id. For that reason, the United States need not respond to a § 2255 petition until ordered to do so. Rule 4(b) of the Rules Governing § 2255 Petitions requires the Court to promptly review each § 2255 petition. If the Court cannot summarily dismiss the petition, it must order the United States attorney to respond. After reviewing the government's response, the Court must hold an evidentiary hearing unless the record makes clear that the petitioner is not entitled to relief. United States v. Espinoza, 866 F.2d 1067, 1069 (9th Cir. 1988). Alternatively, the Court may dismiss the petition without response or hearing if it is clear from the record that the petitioner does not state a claim for relief or if the claims are frivolous or palpably incredible. United States v. Burrows, 872 F.2d 915, 917 (9th Cir. 1989) (citing Baumann v. United States, 692 F.2d 565, 570–71 (9th Cir. 1982)).

III.     Analysis

Wittner argues that his counsel at the sentencing hearing was ineffective because Dr. Chambers's report that defense counsel submitted contained inculpatory evidence that caused the Court to give Wittner a stricter sentence. To prevail on an ineffective assistance of counsel claim, a defendant must show "that counsel's performance was deficient," and that "the deficient performance prejudiced the defendant." Strickland v. Washington, 466 U.S. 668, 687 (1984). The Court finds that Wittner has not met his burden to show either element of his ineffective assistance of counsel claim.

A.  <u>Deficient Performance</u>

The "proper standard for attorney performance is that of reasonably effective assistance." <u>Id.</u> The performance inquiry "must be whether counsel's assistance was reasonable considering all the circumstances." <u>Id.</u> at 688. "Surmounting Strickland's high bar is never an easy task." <u>Padilla v. Kentucky</u>, 559 U.S. 356, 371 (2010). To demonstrate deficient performance, a defendant must show "that counsel made errors so serious that counsel was not functioning as the 'counsel' guaranteed the defendant by the Sixth Amendment." <u>Strickland.</u> 466 U.S. at 687. "Because of the difficulties inherent in making [this] evaluation, a court must indulge a strong presumption that counsel's conduct falls within the wide range of reasonable professional assistance; that is, the defendant must overcome the presumption that, under the circumstances, the challenged action 'might be considered sound trial strategy.'" <u>Id.</u> at 689 (quoting <u>Michel v. Louisiana</u>, 350 U.S. 91, 101 (1955)).

Wittner argues that admitting Dr. Chambers's report constituted deficient performance because it could not have been used as part of a reasonable defense strategy. He argues that counsel had no obligation to submit the report at all, that the report uses tests that analyze future risk of violent offenses, not possession of child pornography, and that counsel could have demonstrated a low risk to re-offend based simply on Wittner's age, education level, and lack of criminal history. While it is true that Wittner's counsel did not have the obligation to submit Dr. Chambers's report, it did have a purpose. The report indicated that Wittner was aware of the problems involved with child pornography and had made attempts to quit consuming such material. Such knowledge and behavior demonstrate an acceptance of responsibility and could be mitigating factors in a sentencing decision. While Dr. Chambers used tests that are typically used to analyze potential future violent offenses,[1] such testimony could be a mitigating factor. Wittner has not been charged with a violent crime, but as the Presentence Investigation Report ("PSR")

---

[1] Dr. Chambers used two tests in his analysis: Sex Offender Risk Appraisal Guide ("SORAG") and the Violence Risk Appraisal Guide ("VRAG"). (ECF #17, at 15–16). SORAG is "designed to predict violent, including hands-on, sexual recidivism among men who have committed at least one previous hands-on sexual offense." SEX OFFENDER RISK APPRAISAL GUIDE, http://criminal-justice.iresearchnet.com/forensic-psychology/sex-offender-risk-appraisal-guide-sorag/ (last visited Aug. 3, 2021). VRAG "assesses the risk of further violence among men or women who have already committed criminal violence." VIOLENCE RISK APPRAISAL GUIDE, http://criminal-justice.iresearchnet.com/forensic-psychology/violence-risk-appraisal-guide-vrag/ (las visited Aug. 8, 2021).

1    states, "pornography can be a gateway to promote sexually deviant behavior." (PSR at 19). Dr.

2    Chambers's analysis could be read to indicate that Wittner is at low risk to re-offend or commit

3    future violent sexual crimes. Such testimony could certainly be a mitigating factor in a

4    sentencing determination and its submission constituted a sound trial strategy.

5         Additionally, Wittner argues that his age, education, and lack of criminal history were

6    sufficient to show that he was a low risk to re-offend. However, as the Court indicated at the

7    sentencing hearing, "[m]any of the people that come before the Court on these charges are very

8    talented and have good jobs and records of community service" and the fact that Wittner "has

9    done many good deeds is not an uncommon situation." (ECF #27, at 16). The Court is not

10   judging a defendant's entire life but must "determine what should be done in response to the

11   crimes that have been committed." Id. Therefore, submitting additional mitigating evidence at

12   sentencing, in addition to Wittner's age, education, and positive conduct in the past, was part of a

13   reasonable defense strategy. Because Wittner cannot overcome Strickland's high bar, his claim

14   must be denied.[2]

15              B.   Prejudice

16        To demonstrate prejudice, a defendant must show "that counsel's errors were so serious

17   as to deprive the defendant of a fair trial, a trial whose result is reliable." Strickland, 466 U.S. at

18   687. "The defendant must show that there is a reasonable probability that, but for counsel's

19   unprofessional errors, the result of the proceeding would have been different." Id. at 694. A

20   reasonable probability "is a probability sufficient to undermine confidence in the outcome." Id.

21   "To assess th[e] probability of a [different sentence], we consider the totality of the available

22   mitigation evidence—both that adduced at trial, and the evidence adduced in the habeas

23   proceeding—and reweigh it against the evidence in aggravation." Miles v. Ryan, 713 F.3d 477,

24   489 (9th Cir. 2013) (quoting Porter v. McCollum, 558 U.S. 30, 41 (2009) (per curiam)). In this

25   case, the Court will determine if the evidence provided, excluding that found in Dr. Chambers's

26

27        [2] Wittner filed a Notice of Supplemental Authority (ECF #58) to make the Court aware of Andrus v. Texas, 140 S.Ct. 1875 (2020). The Court finds Andrus distinguishable from the instant action as the counsel in Andrus failed

28   to uncover voluminous mitigating evidence in addition to supplying inculpatory evidence. Id. at 1883. That is not the case here and Andrus was not decided solely on defense counsel's introduction of "so-called mitigating evidence" that "unwittingly aided the State's case in aggravation." (ECF #58, at 2).

1    report, was sufficient to warrant Wittner's within-Guideline sentence.

2         Wittner argues that he suffered prejudice because the Court issued his sentence while

3    relying on improper, inaccurate, or mistaken information. Specifically, Wittner argues that the

4    Court relied upon information in Dr. Chambers's report that it would not have otherwise known

5    without the report. Wittner concludes that it is reasonably probable that the Court would have

6    issued a more lenient sentence if it did not have the information provided in Dr. Chambers's

7    report. The Court disagrees. While the transcript of the sentencing hearing shows that the Court

8    relied on information from Dr. Chambers's report, the PSR contains sufficient information on its

9    own to justify the within-Guideline sentence. The PSR states that the probation officer "has not

10   identified any factors under 18 U.S.C. § 3553(a) that may warrant a variance and imposition of a

11   non-guideline sentence." (PSR at 18). It then dedicates 11 paragraphs to the justification of a

12   sentence within the Guidelines, without mentioning any of the information from Dr. Chambers's

13   report. Id. at 18–20. A sentence within the Guidelines was possible from the moment Wittner

14   pleaded guilty. The PSR includes sufficient information to justify such a sentence while

15   considering the sentencing goals of 18 U.S.C. § 3553(a). Because there were alternative grounds

16   to justify Wittner's sentence, his counsel's submission of Dr. Chambers's report did not result in

17   prejudice.

18        Failure to satisfy either prong of the Strickland analysis would result in a denial of the

19   claim. Wittner has failed to satisfy both prongs and his motion is denied.

20                          C.  Certificate of Appealability

21        To appeal this order, Wittner must receive a certificate of appealability. 28 U.S.C. §

22   2253(c)(1)(B); Fed. R. App. P. 22(b)(1); 9th Cir. R. 22–1 (a). To obtain that certificate, he "must

23   make a substantial showing of the denial of a constitutional right, a demonstration that . . .

24   includes showing that reasonable jurists could debate whether (or, for that matter, agree that) the

25   petition should have been resolved in a different manner or that the issues presented were

26   adequate to deserve encouragement to proceed further." Slack v. McDaniel, 529 U.S. 473, 483-

27   84 (2000) (quotation omitted). When a district court "has denied a movant's habeas claims on the

28   merits, the movant must demonstrate that reasonable jurists would find the district court's

assessment of the claims debatable or wrong." <u>United States v. Shipley</u>, No. 2:00-cr-00051-KJD-PAL, 2007 WL 586690, at *1 (D. Nev. Feb. 13, 2007). The Court finds that Wittner has failed to demonstrate that reasonable jurists would find the Court's assessment of his claims debatable or wrong. Wittner's counsel had a valid strategy when he introduced Dr. Chambers's report and Wittner did not suffer prejudice because, even without considering the report, there were adequate grounds for Wittner's sentence. Because reasonable jurists would not find the Court's assessment debatable or wrong, Wittner is denied a certificate of appealability.

IV.    <u>Conclusion</u>

Accordingly, IT IS HEREBY ORDERED that Defendant's Motion to Vacate Sentence (ECF #48) is **DENIED**.

IT IS FURTHER ORDERED that Defendant's Motion for Ruling under Section 2255 Rule 4(b) Due to Public Health Emergency (ECF #51) is **DENIED as moot**.

IT IS FURTHER ORDERED that Defendant's Original Motion to Vacate Sentence (ECF #34) is **DENIED**.

IT IS FINALLY ORDERED that Defendant is **DENIED** a Certificate of Appealability.

Dated this 3rd day of August, 2021.

Kent J. Dawson
United States District Judge